IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-0363-RPM

CYNTHIA MERRIAM,

    Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    Defendant.

___

MEMORANDUM OPINION AND ORDER
___

In this civil action Cynthia Merriam (Merriam) seeks judicial review under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, of the denial of long term disability benefits under the Plan of her employer, Noble Energy, Inc. (Noble). Life Insurance Company of North America (LINA) is the claim administrator and payor of benefits. The complete administrative record has been submitted and Merriam filed a motion for summary judgment and opening brief on September 22, 2008.[1] The issues have been fully briefed and oral argument heard on September 28, 2010.

Merriam was employed by Noble and its predecessor from 2004 until July 20, 2006, her last day of work. The Plan provides for payment of benefits if the employee is unable to perform the material duties of her regular occupation because of a disability that is continuous for a period of 180 days. The controlling question is whether the administrative record contains such

---

[1] A motion for summary judgment has become common in these cases but the standards under Fed.R.Civ.P. 56 are not applicable.

evidence in contradiction to LINA's determination that Merriam was not disabled from July 21, 2006 to January 16, 2007 as to make the denial so unreasonable that it should be reversed. The parties dispute the applicability of the arbitrary and capricious standard of review. Merriam asserts the inherent conflict of interest of LINA as limiting the deference to be given its decision in the exercise of the discretionary authority provided by the Plan, citing procedural irregularities in processing the claim and administrative appeals as will be discussed.

On August 25, 2006, Merriam completed a Group Long Term Disability form, stating: "I have a rare disease that affects my nervous system, muscles, heart, cognitive function." She listed her attending physicians as Dr. Jackie McCollum and Dr. Arthur Gutierrez-Hartmann. (Rec 496.) Dr. Gutierrez-Hartmann is an endocrinologist who is a Professor of Medicine, Division of Endocrinology, at the University of Colorado Hospital. Dr. McCollum is a family practitioner.

Emma Arseno of Noble completed the employer section of the form, stating Merriam's "occupation" was that of a "sr admin assistant" (senior administrative assistant), consisting of sitting 60% of the time, standing 10%, and walking 20%. (Rec 497.) The job description for that position stated, under "general summary": "[p]rovides administrative support to the Vice President General Counsel, Attorneys and Sr. Administrative staff." (Rec 498.) Principal responsibilities included typing, creating reports, reviewing expenditures, answering phones, creating files, and making travel arrangements. (Rec 498.)

LINA received Merriam's claim on September 21, 2006. (Rec 53.)

LINA acknowledged receipt by letter dated September 22, 2006, requesting additional information and advising that her employer and Drs. Gutierrez-Hartmann and McCollum would

be contacted to obtain information. (Rec 484-485.)

By letter dated September 26, 2006, Drusilla Gamez (Gamez) of LINA requested Dr. McCollum to provide office visit notes from June, 2006, test results and completion of Medical Request and Physical Abilities Assessment forms. (Rec 473.) The same form letter went to Dr. Gutierrez-Hartmann.

Ms. Gamez wrote to Merriam on October 18, 2006, advising that no decision on her claim could be made until the requested information was provided. (Rec 448-449.)

Under date of October 22, 2006, Dr. Gutierrez-Hartmann provided the requested forms and a copy of his clinical notes. He stated on the Medical Request Form: Merriam's primary diagnosis was "adult onset hypoparathyroidism"; he has been treating her since November 2005; her last visit was October 16, 2006; he answered "none" in response to the question "[w]hat are the specific restrictions that you have placed on your patient?" at work; and he answered "yes" to the question "[c]ould your patient return to work at this time if accommodations were made for the listed restrictions?" (Rec 432.)

On the Physical Ability Assessment Form, Dr. Gutierrez-Hartmann answered "[n]ot applicable to diagnosis(es)" for all questions relating to Merriam's functional impairment assessment, such as sitting, standing, walking, reaching, lifting and carrying. That is, there was no impairment to her physical functioning. (Rec 433-434.) He also wrote: "The hypoparathyroidism should not be an issue since this is now under control with TR [treatment]." (Rec 434.)

Dr. Gutierrez-Hartmann's August 28, 2006 treatment notes stated Merriam was referred to him by Dr. McCollum in November 2005; developed hypocalcemia as an adult in 1997; and

3

was seeing a psychologist, Dr. Robert Handley. His notes also stated Merriam was seeking a letter from his office stating she had a medical reason for long term disability but he:

> basically told her that [he] could not sign such a letter, since now that her calcium was normal with appropriate treatment that the symptoms she was describing regarding diffuse aches and pains should not be due to low calcium. In addition, since all her UH [University Hospital] emergency room visits and emergent visits to Dr. McCollum's office had revealed normal calciums without any clinical evidence of tetany or hypocalcemia, but rather normal calcium events; that at this point we did not have sufficient medical evidence to be able to sign such a letter.

(Rec 438.)

He stated Merriam likely had two separate problems: idiopathic hypoparathyroidism and "[m]ood disorder as suggested by Dr. Handley." (Rec 438.) He referred Merriam to Dr. James Oberwetter, a psychiatrist and endocrinologist. (Rec 440.)

Gamez reviewed Merriam's file on November 16, 2006, noting that no work restrictions were placed on Merriam by Dr. Gutierrez-Hartmann as hypoparathyroidism was under control; there was no response from Dr. McCollum; and Merriam had not returned her forms. (Rec 32, 401.)

Gamez denied Merriam's claim by letter dated November 28, 2006. Gamez advised Merriam she had the right to appeal and submit new documentation. (Rec 388.)

The next contact came by letter dated May 11, 2007, from counsel, forwarding a May 10, 2007 "Medical Source Statement" from Dr. McCollum. In that document Dr. McCollum said she had been treating Merriam since 1997, that in Dr. McCollum's opinion Merriam meets the social security criteria for "hypoparathyroidism with severe recurrent tetany," and that Merriam was not capable of regular and continuous work, eight hours per day, five days per week or any equivalent work schedule. She also stated Merriam was placed on short-term disability in

4

February 2006 and unsuccessfully attempted to return to work in May, June and July 2006 but ended due to "recurrence of tetany." (Rec 356.)

Neither Dr. McCollum's notes nor the forms LINA previously requested were submitted with the Medical Source Statement.

By letters dated June 21, July 2[2], and July 16, 2007, counsel submitted the following additional documents in support of the appeal (Rec 273-294, 298-377, 295-97):

March 13, 2007 report from Brett Valette, Ph.D., a social security benefits consultative examiner, of his March 5, 2007 examination of Merriam. (Doc. #12, Motion, p. 8; Rec 324-326.) Dr. Valette's diagnostic impression included "major depression, related to medical condition," "hypoparathyroidism, by patient report," severe psychosocial stressors, and a global functioning (GAF) of 55. (Rec 325-326.);

March 16, 2007 report for Claudia Panzer, M.D., a board certified internal medicine/endocrinologist to whom Dr. McCollum referred Merriam. (Rec 286 & 217.) Dr. Panzer reviewed Merriam's past medical history based on outside records and did a physical examination. (Rec 286.) Under "assessment and plans," Dr. Panzer stated Merriam had idiopathic hypoparathyroidism as well as mood disorder. (Rec 287.) Dr. Panzer offered no opinion as to disability and placed no restrictions and limitations on Merriam. (Rec 286-288.) Dr. Panzer's notes from March 2007 that Merriam reported "difficult breath, pain in face/arm hurt[,] thigh hurt" on March 15, 2007 and that, "overall, her myalgias have markedly improved" and she felt more energetic with less depression on March 29, 2007. (Rec 332.);

---

[2]The documents identified in Merriam's counsel's July 2, 2007 letter do not match those documents which follow the letter and as identified by LINA. (*Compare* Rec 298 *with* Rec 299-377; Doc. #13, p. 8.) Merriam did not dispute LINA's statement of what was submitted.

5

March 16, 2007 letter from Mischaela R. Rubin, M.D., an endocrinologist from New York Presbyterian Hospital. (Rec 289.) Dr. Rubin stated Merriam was a participant in a hypoparathyroidism program and has been diagnosed with hypoparathyroidism. Dr. Rubin described the condition but offered no opinions as to Merriam's condition or any limitations or restrictions or functionality;

An April 12, 2007 report from Claudia Elsner[3], M.D., from a consultative exam. (Rec 327-331; Doc. #12, p. 20.) Dr. Elsner noted what Merriam reported, such as episodes of muscle cramps. Dr. Elsner's exam of Merriam showed no abnormalities, stating "claimant certainly had an unrevealing physical exam today." (Rec 329.) Among other things, Dr. Elsner noted that Merriam is a very reliable historian, has an impressive memory, and gives incredible details about the studies in which she is enrolled. (Rec 329.) Her assessments of Merriam were: hypoparathyroidism; normal musculoskeletal and cardiovascular exam; recurrent musculoskeletal pains; and depression. (Rec 329.) She stated:

> This examiner assesses claimant as not being able to work a regular job presently as she has multiple symptoms with pains and cramps, which are not well understood.
> 
> * * *
> 
> At this point, it is pointless to debate if depression came first and then her illness or vice versa. Claimant understandably is emotionally affected by a battle that she had to lead to be heard. On the other hand, she does have a very rare disease and most physicians would not know about this in detail, including this examiner.

(Rec 330.) Dr. Elsner stated she did not know how long it would take Merriam to recover. Dr. Elsner also offered no opinion as to Merriam's ability to work a regular job prior to Dr. Elsner's assessment of April 12, 2007;

---

[3]Dr. Elsner is also referred to as Dr. Eisner in the record and papers.

June 14, 2007, Work Capacity Evaluation (Mental) social security form, completed by Dr. McCollum, which stated "extreme" limitations in only one category - - "the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances." (Rec 274.) Most tasks are marked as "moderate" - - moderate limitation but still able to function. (Rec 274-276.);

June 15, 2007, Medical Source Statement of Ability to Do Work Related Activities (Physical) social security form completed by Dr. McCollum, which stated Merriam could never lift or carry up to 10 pounds; could sit 2 hours, stand 1 hour, and walk 2 hours total in an 8 hour work day; could occasionally use her hands and occasionally use her feet to operate foot controls; could occasionally kneel and crouch; and could not focus or concentrate when calcium fluctuations occurred. (Rec 279-285.);

June 15, 2007 Stress Questionnaire, completed by Dr. McCollum, which stated Merriam: could not work 8 hours a day; would likely be absent more than 4 times a month; would have an increase in her level of impairment by work-related stressors; would be unable to complete an 8-hour work day more than 3-4 times per month; and had no capacity to perform work-related mental activities, such as making judgments and carrying out simple instructions, on a sustained basis. (Rec 277-278.);

June 29, 2007 letter from Dr. Rubin which confirmed that Merriam has hypoparathyroidism, and stated that "local endocrinologists are not always familiar with hypoparathyroidism" which sometimes can delay the appropriate diagnosis and treatment. (Rec 365.) Dr. Rubin does not address disability or functionality; and

July 5, 2007 letter from James M. Oberwetter, M.D., a psychiatrist and endocrinologist,

7

to whom Dr. Gutierrez-Hartmann had previously referred Merriam. (Rec 296-297.) Dr. Oberwetter saw Merriam in consultation for her hypoparathyroidism twice, December 15, 2006 and February 2, 2007. Dr. Oberwetter stated that although he has not received training in disability determinations, he agrees with Dr. McCollum's assessment. (Rec 296.)

By letter dated July 23, 2007, Merriam's counsel stated he had completed his submissions for Merriam's appeal with his July 16, 2007 letter and its attachments. (Rec 270.)

On July 24, 2007, Noemi Martinez-Landis, the case manager assigned to handle the appeal, reviewed the file, and wrote in LINA's internal records: "[s]taffed with SCM and due to rare diagnoses will forward file for IPR [independent physician review] with endocrinologist . . . ." (Rec 17, 267-269.)

Intracorp, a medical vendor, assigned the file to Tamara Bowman, MD, board certified in internal medicine/endocrinology and licensed in Florida and North Carolina. (Rec 267, 262-265.)

Dr. Bowman prepared a report dated August 3, 2007. (Rec 262-265.) Dr. Bowman stated she reviewed the medical records provided, listed some of the medical records reviewed, provided a clinical history based on the documents reviewed, and noted no office visit notes were provided from Dr. McCollum. (Rec 262-263.) Dr. Bowman concluded:

> After review of the medical information provided, there are insufficient clinical findings documented to support the restrictions and limitations on the part of the claimant from an endocrine standpoint. Although the claimant has idiopathic hypoparathyroidism, during the time period in question, her serum calcium and ionized calcium have been documented to be essentially normal. There is no documentation, during the time period in question, of any clinical signs of hypocalcemia, including hypocalcemic tetany, in the claimant.

\* \* \*

> . . . There is no documentation, during the time period in question, of any physical examination findings, lab abnormalities or diagnostic study results to support a functional deficit in the claimant that would warrant any restrictions or limitations.

(Rec 264.)

Among other things, LINA had asked Dr. Bowman that if she disagreed with Merriam's attending provider, to please contact that provider and summarize the conversation in Dr. Bowman's report. (Rec 269.) Dr. Bowman stated she tried to contact Dr. McCollum twice but was unable to reach her. Dr. Bowman further stated:

> I disagree with Dr. McCollum's assessment that the claimant is unable to perform any regular type of work for eight hours a day five days per week. There is no documentation of physical examination abnormalities or other diagnostic study results to support a functional impairment in the claimant or to support any restrictions, limitations or need for accommodation on the part of the claimant.

(Rec 264-265.)

By letter dated August 16, 2007, Merriam's counsel submitted the following additional documents (Rec 242-257):

1. February 25, 2005 letter from Merritt C. Rudolph, M.D. which states the patient ( Merriam) has symptomatic hypocalcemic due to hypoparathyroidism (Rec 257);

2. June 17, 2005 letter from Dr. Rudolph, in support of Merriam's request for leave under the Family Medical Leave Act. Dr. Rudolph stated Merriam has idiopathic hypoparathyroidism which has been difficult to control, they are still in the process of identifying the most appropriate combination of medications to control her serum calcium concentration, and hypocalcemia can lead to tingling of digits and around the mouth, muscle spasm and cramping, and vocal cord spasm causing emergent breathing problems. Merriam has had "rather severe low serum calcium concentrations provoking these difficulties, which in turn

9

limit her function at work." (Rec 243.);

      3.      1997, 1998 and 2002 medical records (Rec 248-256); and

      4.      Dictionary of Occupational Titles, for the duties of a legal secretary (Rec 244-247).

By letter dated August 28, 2007, LINA affirmed its previous denial of long term disability benefits, stating: "The evidence in the file indicates that Ms. Merriam is requesting Long Term Disability benefits . . . from performing her sedentary occupation of an Administrative Assistant, from July 21, 2006 forward." (Rec 239.) "Per [the] policy language, to qualify for Long Term Disability benefits, the medical evidence on file must first support functional deficits preventing the sedentary functional abilities from July 21, 2006 through January 17, 2007 and then to the present." (Rec 240.)

The letter stated that all medical evidence was taken into consideration and an independent peer review was done by a physician board certified in endocrinology. (Rec 240.)

> The review of the available evidence indicates there are insufficient clinical findings documented in her medical records to support functional restrictions and limitations from an endocrine standpoint. Although Ms. Merriam had idiopathic hypoparathyroidism, during the time period in question, her serum calcium and ionized calcium have been documented to be essentially normal. There is no documentation, during the period of time in question, of any clinical signs of hypocalcemia, including hypocalcemic tetany, in the claimant. She has been evaluated in the emergency room on several occasions with symptoms of muscle cramps and pain. Her serum calcium has been found to be normal. Her hypoparathyroidism appears stable and well-controlled on her current medical regime. Her physical examination, both by Dr. Panzer and Dr. Gutierrez-Hartmann, has been normal. Also, Dr. Eisner, in the Independent medical evaluation performed on April 12, 2007, documented no difficulty walking, and she has a normal musculoskeletal examination and normal neurologic examination.

(Rec 240.)

10

LINA acknowledged the receipt of the additional documentation submitted by Merriam's counsel in his letter dated August 16, 2007, stating that it "provided medical evidence from 1997 to 2005 from Dr. Rudolph's office," and:

> [a]though this documentation is informational about Ms. Merriam's condition during that period of time, it does not provide any documentation of her functional abilities throughout the Elimination Period. Disability is determined by medically supported functional limitations/restrictions which preclude Ms. Merriam from performing her sedentary occupation as an Administrative Assistant through the Elimination Period and then forward. The review of the medical evidence on file indicates that although the records provide information of her conditions and treatment plans, it does not provide documentation of limitations and restrictions that would prevent her from function[ing] at a sedentary capacity for the time period in question.

(Rec 240.)

LINA told Merriam she could request review of this decision, and stated:

> In addition to any written comments, your request for review must include new documentation you wish us to consider.
>
> This documentation includes, but is not limited to:
>
> Medical records and test results from your treating physicians dating from July 20, 2006 forward[.]
> Specific limitations and restrictions to your abilities that may have been placed by any of your physicians since July 20, 2006.

(Rec 240-241.)

By letter dated September 17, 2007, Merriam's counsel stated that Merriam was appealing. (Rec 215.) This was Merriam's second administrative appeal. She submitted the following (Rec 215-220):

1. March 16, 2007 report by Dr. Panzer (Rec 217-220). An unsigned copy of this report, missing the first page, was previously submitted to LINA by letter dated June 21, 2007. (Rec 273, 286-288.) No opinion is expressed as to disability or functionality; and

11

2.      September 13, 2007 Medical Source Statement by Dr. Panzer which stated she "substantially agree[s] with the restrictions and limitations of Dr. [McCollum] as well as the comments of 7/5/07 of Dr. Oberwetter." (Rec 216.) No rationale was given. (Rec 216.)

The September 17, 2007 letter also stated it was submitting a July 14, 2007 report by Dr. Panzer. Its location in the records has not been identified by the parties. (*See* Doc. #13, p. 11.) It was not considered by the court.

By letter dated October 15, 2007, Merriam's counsel stated that Merriam's job was actually that of a paralegal and submitted the following additional documentation (Rec 170):

1.      October 12, 2007 letter and enclosures from Kirk Moore, Associate General Counsel for Noble, Merriam's former employer. (Rec 171-190.) Mr. Moore stated Merriam's title with Noble was "Legal Administrator," and she did not meet all of the qualifications solicited in the Legal Administrator job description so the human resources department treated Merriam as though she was assigned the job title "Senior Legal Administrative Assistant." (Rec 171-172.) Mr. Moore also stated Noble does not use or make offers based on information obtained from Salary.com;

2.      Dictionary of Occupation Titles for a paralegal (Rec 191-194);

3.      Job descriptions for law clerks from Salary.com (Rec 195-202);

4.      May 1, 2007 Physical Residual Functional Capacity Assessment from Kent Kreider, M.D., a medical consultant. (Rec 203-210.) It is marked as a "current evaluation." (Rec 203.) Dr. Kreider stated Merriam could occasionally and frequently lift and/or carry up to 10 pounds; could stand and/or walk at least 2 hours and sit about 6 hours in an 8-hour work day; had no limitations for pushing or pulling (other than as noted for the lift/carry); could frequently

climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; could occasionally climb ladder/rope/scaffolds; and had no manipulative, visual, communicative or environmental limitations. (Rec 204-207.)

He also stated:

Partial weight can be given to CE's MSO. CE felt claimant cannot work a regular job but there was no indication on exam of muscle pain, weakness, normal ROM of joints, no spasm. Claimant can do research of her disease very thoroughly and her memory as mentioned is excellent.

(Rec 209.); and

    5.    March 13, 2007 report by Dr. Valette of a March 5, 2007 appointment. (Rec 211-213.) This document was previously provided to LINA on July 2, 2007. (Rec 298, 324-326, & 262 [Dr. Valette's report was referenced by Dr. Bowman in her August 3, 2007 report]; see note 1.)

By letter dated October 18, 2007, Merriam submitted information about her position with Noble and its predecessor to LINA. (Rec 143-169.) She stated she was Noble's "Legal Administrator" and submitted a business card where her title was designated "Legal Administrator." (Rec 148.) She stated she worked as a paralegal for Arnold Johnson, the senior vice president, general counsel and secretary for Noble. Essentially, she said that Mr. Moore, Noble's associate general counsel, was unaware of her qualifications, job description and job duties. (Rec 143.)

By letter dated November 7, 2007, Merriam's counsel submitted the following documentation from Robert Handley, Ph.D., a clinical psychologist (Rec 132-140):

    1.    October 29, 2007 letter where Dr. Handley stated he saw Merriam for two episodes of outpatient therapy. The first episode was from November 2003 to March 2004 as

13

Merriam was dealing with the deployment of her daughter to Iraq. He stated that at the end of this episode, her overall function was quite high. "On intake, she was initially seen as having a Global Assessment of Functioning Score (GAF) of 55 (moderate symptoms, producing moderate difficulty in social, occupational, or school functioning)." (Rec 133.)

During the second episode, Dr. Handley saw Merriam from May 19, 2006 until October 2006, when Merriam stopped treatment. Her discharge diagnosis included mood and anxiety disorder, psychological factors affecting a physical condition, idiopathic hypoparathyroidism, and a GAF of 45 (serious impairment of social and occupational functioning). He opined that, at the time Merriam stopped treatment, she "was clearly disabled, unable to work and in daily pain and discomfort." (Rec 134.) He concluded that "[i]f [Merriam] continues to suffer as much as she was at the end of her treatment she would clearly be disabled. I would hope, however, that she has continued to pursue treatment. . . ." (Rec 135.);

2. October 29, 2007 Work Capacity Evaluation (Mental), where Dr. Handley noted "marked" difficulties with maintaining attention and concentration for extended periods, with performing activities within a schedule, and with sustaining an ordinary routine. He stated "[t]his pt was unable to function in a work setting. . . . To say her dysfunction was purely psychological is probably inaccurate." (Rec 137.); and

3. October 29, 2007 Stress Questionnaire, where Dr. Handley stated Merriam would not be able to sustain an 8-hour work day, would likely be absent more than 4 times a month, and would be unable to complete a workday more than 3-4 times a month. He stated the date of the onset of these limitations was July 21, 2006, and that it was very difficult to rule out medical versus psychological contributors. (Rec 139-140.)

On November 12, 2007, by email, LINA asked Noble what occupation Merriam was performing on her last day worked and to provide LINA with a job description for that position. (Rec 142.) In response, Noble stated that a corrected job description was previously provided to Drusilla Gamez on October 3, 2007, and forwarded the email communication between LINA and Gamez of that date. (Rec 141.) In the October 3, 2007 email, Noble stated to Gamez that: "[w]hen the initial claim was submitted . . . the job description was not the best match for the job she performed." Noble attached a job description and asked "[p]lease let me know if this has any bearing on the status of her claim." Gamez responded to Noble that the information did not change LINA's previous claim decision. (Rec 141.)

On November 12, 2007, LINA entered the following information in its internal files:

> On appeal, some medical received, but cx and atty are disputing occ. They state that cx was both [a] Sr.Admin asst and legal administrator. Discussed with ASCM and she stated to email ER to clarify. I emailed ER on 11/12/07 and once received, will review to see if we need to forward to VRC to address. Email received from ER stating again that cx was the Sr. Administrative Asst at the time she stopped working, which has already been established as a sedentary occupation. . . .

(Rec 12.)

By letter dated November 12, 2007, LINA affirmed its previous denial of Merriam's claim for benefits. (Rec 129-131.) LINA stated:

> As part of Ms. Merriam's appeal, you submitted various documentation indicating that Ms. Merriam was a paralegal. However, we have again confirmed with Nobel [sic] Energy that Ms. Merriam's occupation at the time she stopped working was a Senior Administrative Assistant, which [is] a sedentary occupation. Therefore, for the purposes of evaluating Ms. Merriam's claim, we considered the occupation of Senior Administrative Assistant.

(Rec 130.)

LINA evaluated whether Merriam was continuously disabled throughout the Elimination

15

Period due to idiopathic parathyroidism. (Rec 130.) It stated that medical information recently submitted was after the Elimination Period had ended. (*Id.*) LINA concluded:

> We do not dispute Ms. Merriam may have been somewhat limited or restricted due to her subsequent diagnoses and treatment; however, an explanation of Ms. Merriam's functionality and how her functional capacity prevented Ms. Merriam from continuously performing the material duties of her occupation from July 21, 2006 through January 16, 2007 and beyond was not clinically supported. The presence of a condition, diagnosis or treatment does not necessarily equate to a presence of a disabling condition or decreased level of functionality.

(Rec 130.) LINA stated Merriam has exhausted all her administrative remedies and has a right to bring legal action under ERISA. (Rec 131.) This action followed.

The parties agree the Plan gives LINA discretionary authority to determine eligibility for benefits, so "a deferential standard of review [is employed], asking only whether the denial of benefits was arbitrary and capricious." *LaAsmar v. Phelps Dodge Corp. Life, Accid. Death & Dismemb. & Depend. Life Ins. Co. Plan,* 605 F.3d 789, 796 (10th Cir. 2010) (internal quotation marks omitted). The "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith." *Id.* (internal quotation marks omitted). "Certain indicia of an arbitrary and capricious denial of benefits include 'lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary.'" *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357-1358 (10th Cir. 2009) (citing *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1282 (10th Cir. 2002)).

Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance." *Graham v. Hartford Life & Acc. Ins. Co., supra* at 1358 (internal quotation marks omitted).

LINA's dual role as the Plan's insurer and claims administrator creates an inherent conflict of interest. That is a factor to be weighed in determining whether LINA abused its discretion in denying benefits.

"Procedural irregularities" in the administrator's consideration of the benefits claim may warrant a de novo review of a benefits denial, notwithstanding the plan affords the administrator discretion to make benefits determinations. *LaAsmar, supra* at 797.

Merriam relies on LINA's inherent conflict of interest and claimed "procedural irregularities" in requesting that any deference be "dissolved." These irregularities include an incorrect job description, "de-selecting" medical records, a tainted review and a failure to appreciate the mind-body connection in disability cases.

The claimed difference in job description as paralegal and legal secretary has significance only in the social security system of rating jobs as sedentary or light work. It has no significance in determining disability under the terms of the Plan . The selective use of medical records by Dr. Bowman and the claim reviewer is due to a difference in appraising the relevance of reports of Merriam's condition at times other than during the elimination period. That six months is the time in issue and much of what was submitted during the appeals process was after January, 2007 and apparently was developed in obtaining social security benefits.

The contentions about Dr. Bowman are not supported by the record and the mind-body connection is argument. In sum, the plaintiff has failed to show that there were such procedural irregularities or any other factors that warrant this Court to depart from the arbitrary and capricious standard of review of the denial decision.

In the briefing the plaintiff seeks to discredit the evaluation made by Dr. Gutierrez-

Hartman, observing that his opinion in contrary to lab reports. The issue is whether Dr, Bowman reasonably relied on his evaluation and the answer is yes. Notably, Dr. Gutierrez-Hartman found that Merriam's subjective symptoms were not consistent with the calcium levels which were being controlled by treatment. Under the Plan, the disabling condition must be continuous during the period.

LINA did not accept the opinions of Dr. McCollum, the primary treating physician. Differently from social security claims, there is no requirement in the Plan or ERISA that any special deference be given to her as the treating physician. It is apparent that Dr. McCullum accepted Merriam's subjective complaints at face value and became an advocate for her patient.

There is no doubt that Merriam has struggled with pain. That in itself does not equate with functional inability to do her job at Noble from July 21, 2006 to January 16, 2007.

Upon consideration of this administrative record and briefs, the Court is unable to say that LINA's denial of this disability claim was arbitrary and capricious, Accordingly, it is

ORDERED, that judgment will enter for defendant dismissing this civil action and awarding costs. The requests for legal fees is denied.

DATED: October 15th , 2010

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge